1

2

3
FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4
May 07, 2020

5
SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

6
## EASTERN DISTRICT OF WASHINGTON

7  SUSAN, W.,[1]

    Plaintiff,

8      vs.

9

10  ANDREW M. SAUL,
    COMMISSIONER OF SOCIAL
    SECURITY,

11      Defendant.

|  |
|---|
| No. 1:19-cv-03165-MKD-1 |
| ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ECF Nos. 14, 15 |

12      Before the Court are the parties' cross-motions for summary judgment.  ECF

13  Nos. 14, 15.  The parties consented to proceed before a magistrate judge.  ECF No.

14  5.  The Court, having reviewed the administrative record and the parties' briefing,

15  is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

16  motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

17  _____

18  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19  identifies them by only their first names and the initial of their last names.  *See*

20  LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ORDER - 2

1   ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2   "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3   *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5   *Sanders*, 556 U.S. 396, 409-10 (2009).

6                    **FIVE-STEP EVALUATION PROCESS**

7        A claimant must satisfy two conditions to be considered "disabled" within

8   the meaning of the Social Security Act.  First, the claimant must be "unable to

9   engage in any substantial gainful activity by reason of any medically determinable

10   physical or mental impairment which can be expected to result in death or which

11   has lasted or can be expected to last for a continuous period of not less than twelve

12   months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

13   "of such severity that he is not only unable to do his previous work[,] but cannot,

14   considering his age, education, and work experience, engage in any other kind of

15   substantial gainful work which exists in the national economy."  42 U.S.C. §

16   423(d)(2)(A).

17        The Commissioner has established a five-step sequential analysis to

18   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19   404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

20   work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

1   "substantial gainful activity," the Commissioner must find that the claimant is not

2   disabled.  20 C.F.R. § 404.1520(b).

3        If the claimant is not engaged in substantial gainful activity, the analysis

4   proceeds to step two.  At this step, the Commissioner considers the severity of the

5   claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

6   from "any impairment or combination of impairments which significantly limits

7   [his or her] physical or mental ability to do basic work activities," the analysis

8   proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

9   does not satisfy this severity threshold, however, the Commissioner must find that

10  the claimant is not disabled.  20 C.F.R. § 404.1520(c).

11       At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 404.1520(d).

17       If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

1  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

2  404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

3       At step four, the Commissioner considers whether, in view of the claimant's

4  RFC, the claimant is capable of performing work that he or she has performed in

5  the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

6  capable of performing past relevant work, the Commissioner must find that the

7  claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

8  performing such work, the analysis proceeds to step five.

9       At step five, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing other work in the national economy.

11  20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

12  must also consider vocational factors such as the claimant's age, education, and

13  past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

14  adjusting to other work, the Commissioner must find that the claimant is not

15  disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

16  other work, analysis concludes with a finding that the claimant is disabled and is

17  therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

18       The claimant bears the burden of proof at steps one through four above.

19  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

20  step five, the burden shifts to the Commissioner to establish that 1) the claimant is

ORDER - 5

1    capable of performing other work; and 2) such work "exists in significant numbers

2    in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

3    386, 389 (9th Cir. 2012).

4                                    **ALJ'S FINDINGS**

5           On June 10, 2016, Plaintiff applied for Title II disability insurance benefits

6    alleging a disability onset date of June 10, 2016.  Tr. 58, 146-49, 150-51.  The

7    application was denied initially and on reconsideration.  Tr. 80-82, 88-92.  Plaintiff

8    appeared before an administrative law judge (ALJ) on February 2, 2018.  Tr. 30-

9    57.  On June 8, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-27.

10          At step one of the sequential evaluation process, the ALJ found Plaintiff,

11   who met the insured status requirements through September 30, 2019, has not

12   engaged in substantial gainful activity since June 10, 2016.  Tr. 17.  At step two,

13   the ALJ found that Plaintiff has the following severe impairments: intractable

14   plantar keratosis (IPK).  Tr. 17.  At step three, the ALJ found Plaintiff does not

15   have an impairment or combination of impairments that meets or medically equals

16   the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff

17   has the RFC to perform a range of sedentary work with the following limitations:

18          She occasionally is able to balance, stoop, kneel, crouch, crawl, and
             climb ramps and stairs but never climb ladders, ropes, or scaffolds.
19          She should avoid concentrated exposure to extreme cold, vibration,
             and hazards.

20

ORDER - 6

Tr. 18.  At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 21.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as night auditor.  Tr. 22.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of June 10, 2016 though the date of the decision.  Tr. 23.

On May 17, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ conducted a proper step-three analysis; and

4.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 2.

ORDER - 7

# DISCUSSION

## A.    Symptom Testimony

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom testimony.  ECF No. 14 at 13-18; ECF No. 16 at 6-8.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

1  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

2  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

3  explain why it discounted claimant's symptom claims)).  "The clear and

4  convincing [evidence] standard is the most demanding required in Social Security

5  cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

6  *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

7        Factors to be considered in evaluating the intensity, persistence, and limiting

8  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

9  duration, frequency, and intensity of pain or other symptoms; 3) factors that

10  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

11  side effects of any medication an individual takes or has taken to alleviate pain or

12  other symptoms; 5) treatment, other than medication, an individual receives or has

13  received for relief of pain or other symptoms; 6) any measures other than treatment

14  an individual uses or has used to relieve pain or other symptoms; and 7) any other

15  factors concerning an individual's functional limitations and restrictions due to

16  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

17  404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

18  individual's record," to "determine how symptoms limit ability to perform work-

19  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

20

ORDER - 9

1   The ALJ found that Plaintiff's medically determinable impairments could

2   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

3   statements concerning the intensity, persistence, and limiting effects of her

4   symptoms were not entirely consistent with the evidence.  Tr. 20.

5   *1. Daily Activities*

6   First, the ALJ found Plaintiff's daily activities were inconsistent with her

7   alleged limitations.  Tr. 20.  The ALJ may consider a claimant's activities that

8   undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

9   2001).  If a claimant can spend a substantial part of the day engaged in pursuits

10  involving the performance of exertional or non-exertional functions, the ALJ may

11  find these activities inconsistent with the reported disabling symptoms.  *Fair v.*

12  *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a

13  claimant need not vegetate in a dark room in order to be eligible for benefits, the

14  ALJ may discount a claimant's symptom claims when the claimant reports

15  participation in everyday activities indicating capacities that are transferable to a

16  work setting" or when activities "contradict claims of a totally debilitating

17  impairment."  *Molina*, 674 F.3d at 1112-13.

18  Here, the ALJ found Plaintiff's capacity to engage in "independent []

19  personal care…prepare simple meals, clean, do laundry, water flowers, take out

20  garbage, do yard work, drive a car, shop in stores, manage money, and pay bills"

ORDER - 10

was inconsistent with her "complaints of disabling symptoms and limitations."  Tr.

20.  However, the ALJ did not explain how these activities, particularly Plaintiff's

ability to engage in personal care, prepare meals, clean, do laundry, water flowers,

manage money, and pay bills, contradict Plaintiff's symptom testimony, which

related solely to the lesions on the soles of her feet caused by her IPK and which

included claims that she is unable to walk on "gravel, lawn, snow, and ice," or any

uneven surface without falling, Tr. 42, 174; that she has increased pain in her feet

causing her to avoid walking and driving, Tr. 179; that her feet feel like they are

"always on fire," Tr. 40; that she has throbbing and shooting pain in her toes and

cannot to stand in the shower, Tr. 175; that she suffers bilateral foot pain when

sitting and standing, Tr. 55; and that she has calloused the size of "dimes and

quarters" which require trimming with a scalpel every two days and monthly

debriding by her podiatrist.  Tr. 180.  The ALJ also did not acknowledge Plaintiff's

reported pain and modifications in her performance of relevant daily activities.  *See

e.g.*, Tr. 177 ("I do housework and I work in my yard with knee pads on my

knees;" "can't go out in rain or snow;" "I have been experiencing greater pain

driving so only driving when necessary"); Tr. 178 (reporting that she stopped

gardening and feeding her chickens because doing so "became too difficult" and

she could no longer walk to the coop); Tr. 40, 175 (explaining she must sit to get

dressed, cannot stand in shower, and cannot stand without shoes on); Tr. 53

ORDER - 11

1  (reporting that she soaks her feet in hot water twice a day for pain relief).  Because

2  the ALJ did not identify how Plaintiff's activities contradicted her testimony

3  regarding her alleged symptoms and did not make any specific findings that these

4  activities are transferable to a work setting, Tr. 20, the ALJ's reliance on Plaintiff's

5  activities in rejecting her reported severity of symptoms fails to meet the specific,

6  clear and convincing standard.  *See Garrison*, 759 F.3d at 1016 (citing *Reddick v.*

7  *Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Recognizing that 'disability claimants

8  should not be penalized for attempting to lead normal lives in the face of their

9  limitations,' we have held that '[o]nly if [his] level of activity were inconsistent

10  with [a claimant's] claimed limitations would these activities have any bearing on

11  [his] credibility.'")); *see also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)

12  (stating that the ability to assist with some household tasks was not determinative

13  of disability).

14       *2. Inconsistent Statements*

15       Second, the ALJ appears to conclude that Plaintiff made inconsistent

16  statements concerning her symptoms and limitations, which the ALJ found

17  detracted from her credibility.  *See* Tr. 21.  In evaluating a claimant's symptom

18  claims, an ALJ may consider the consistency of an individual's own statements

19  made in connection with the disability-review process with any other existing

20  statements or conduct under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273,

ORDER - 12

1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

As an initial matter, Plaintiff argues that, as an individual who was over 60 years old at the time she applied for disability and who "had a solid work history going back for decades," she is entitled to a finding of substantial credibility.  ECF No. 14 at 13-14.  A claimant's credibility may be enhanced where they have demonstrated a "good work history over an extended time period."  *See Archer v. Apfel*, 66 F. App'x 121, 122 (9th Cir. 2003); *see also Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016) ("we have said that 'a claimant with a good work record is entitled to [a finding of] substantial credibility when claiming an inability to work because of a disability'").  Here, Plaintiff has worked continuously since 2000.  Tr. 156-59.  While work history is just one of the factors that the ALJ may consider, the Court finds that Plaintiff's credibility is enhanced by her substantial and constant work record.

The ALJ found that Plaintiff's testimony that she could sit one or two hours at a time and could move her feet under her desk to keep them from getting cold was inconsistent with her allegation that she was disabled and unable to work a

ORDER - 13

sedentary job.  Tr. 21.  At the hearing, after admitting that she has "never really sat for two hours," Plaintiff estimated she could sit for one or two hours and move her feet around to keep them from getting cold.  Tr. 52-54.  She also testified that, even with the ability to move her feet under her desk during the day, her feet would turn purple and get cold; she may need to soak her feet in hot water; and that she likely would not be able to stand after sitting for that long.  Tr. 53-54.  She testified that, at home, she soaks her feet in hot water "at least twice a day."  Tr. 54.  She further testified that her feet "hurt two-thirds as much sitting as they do standing."  Tr. 54.  Plaintiff contends that this testimony, coupled with the vocational expert's testimony that breaks to soak her feet twice a day in excess of normal workplace breaks would not be tolerated, is consistent with her allegation that she is unable to work.  ECF No. 14 at 16.  She also contends that her "estimation" that she could sit less than two hours at a time without taking a break to move around or soak her feet was stated in the context of her home activities rather than a place of employment.  ECF No. 16 at 7.  In response, Defendant contends that Plaintiff's testimony demonstrates a capacity to perform sedentary work, which is inconsistent with her allegation of a disabling impairment.  ECF No. 15 at 11.  Defendant further contends that Plaintiff's foot baths are not noted or recommended in treatment records and, thus, should not be regarded as required treatment.  ECF No. 15 at 11.

ORDER - 14

1    In light of Plaintiff's testimony, read in the context of the entire hearing, and

2    acknowledging Plaintiff's strong work history, the Court discerns no apparent

3    inconsistency between her estimation that she could sit for one to two hours at a

4    time with numerous breaks for walking, adjusting, moving, or soaking her feet in

5    hot baths, and her allegation of disabling IPK.  Thus, this was not a clear and

6    convincing reason supported by substantial evidence to find Plaintiff's symptom

7    testimony less credible.[2]

8

9    _____

10   [2] Elsewhere in her opinion, the ALJ states that Plaintiff "reported bilateral foot pain

11   limiting walking and standing," however, "she further reported that she was able to

12   engage in moderate exercise."  Tr. 19 (citing Tr. 233).  It is not evident that the

13   ALJ relied on this notation to discredit Plaintiff's subjective symptom testimony.

14   However, even if she had, the notation is not clearly inconsistent.  The cited

15   notation is listed under Plaintiff's "Past Medical History" and otherwise provides

16   no information as to what constitutes moderate exercise, when Plaintiff engaged in

17   moderate exercise, or whether Plaintiff continued to engage in moderate exercise.

18   Tr. 233.  The same medical record lists bilateral foot pain as a current

19   problem/chief complaint and notes that Plaintiff is seeking disability, with the

20   support of her podiatrist, due to her IPK.  Tr. 232, 234, 236.  There is not

ORDER - 15

1    *3. Non-Compliance with Treatment Recommendations*

2    The ALJ also appears to conclude Plaintiff's symptom testimony was

3    undermined by noncompliance with treatment recommendations.  Tr. 19.  It is

4    well-established that unexplained or inadequately explained noncompliance with

5    treatment reflects on a claimant's credibility.  *See Molina*, 674 F.3d at 1113-14;

6    *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Smolen*, 80

7    F.3d at 1284 (an ALJ may consider a claimant's unexplained or inadequately

8    explained failure to follow a prescribed course of treatment when assessing a

9    claimant's credibility).  The requirement to follow prescribed treatment applies

10    when such treatment "is expected to restore [the claimant's] ability to work," *see*

11    20 C.F.R. § 404.1530(a), and does not extend to treatments "merely recommended

12    or suggested" by a medical source.  *See Maxwell v. Astrue*, No. 1:11-CV-01509

13    SMS, 2012 WL 4035538, at *6 (E.D. Cal. Sept. 12, 2012) (finding record showed

14    colectomy procedure was recommended but not prescribed and claimant's decision

15    not to undergo procedure was not a valid reason to discredit her testimony);

16    *Aguirre v. Astrue*, No. ED CV 08-1176PLA, 2009 WL 3346741, at *6 (C.D. Cal.

17    Oct. 14, 2009) (finding ALJ erred by discrediting Plaintiff's testimony for

18    _____

19    substantial evidence in the record indicating Plaintiff exercised in a way

20    inconsistent with her allegations.

ORDER - 16

1   noncompliance with treatment when she refused treatment which was never

2   actually prescribed); *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir. 1985)

3   (refusal to undergo surgical treatment is not a sufficient reason to deny benefits

4   where surgery was at most recommended or suggested but not prescribed by a

5   physician); *Young v. Califano,* 633 F.2d 469, 472–73 (6th Cir. 1980)

6   (unwillingness to undergo a suggested surgery does not constitute failure to follow

7   prescribed treatment).

8       Here, the ALJ noted that Plaintiff "continued to wear Birkenstocks" despite

9   Dr. Orminski's recommendations that she "buy running shoes with inserts."  Tr.

10  19.  Dr. Orminski wrote Plaintiff a prescription for Birkenstocks on September 3,

11  2015.  Tr. 181.  On June 28, 2016, Dr. Orminski recommended Plaintiff "consider

12  Keen shoe gear and we can modify the insole;" he noted the Birkenstocks [were]

13  not workable functional shoe[s] for her."  Tr. 266-67.  On August 25, 2016, Dr.

14  Orminski "recommended HOKA shoes with inserts that may have to be modified

15  for her."  Tr. 263.  Plaintiff contends that Dr. Orminski's subsequent

16  recommendations of Keens and HOKAs were mere suggestions, and notes that she

17  continued to wear her prescribed footwear.  ECF No. 14 at 17.  Plaintiff further

18  contends "there is also no indication that wearing a different kind of shoe would be

19  considered treatment of any kind" in light of Dr. Orminski's statement that the

20  only treatment consisted of avoiding weightbearing and debridement of the lesions.

1  *Id.* at 17-18.  This issue is uncontested by Defendant.  Based on this record, the

2  Court cannot conclude that Plaintiff's failure to obtain running shoes with insoles

3  constitutes noncompliance upon which the ALJ could discredit her testimony.  *See*

4  *Overacker v. Astrue*, No. CV-11-3017-CI, 2012 WL 5993753, at *5 (E.D. Wash.

5  Nov. 30, 2012) (noting it is improper to deny benefits on the basis of declined

6  treatment when treatment is only suggested rather than a prescribed course of

7  treatment).  This was not a clear and convincing reason to discredit Plaintiff's

8  symptom testimony.

9        *4.  Lack of Objective Medical Evidence*

10        Next, the ALJ found that the medical evidence did not fully support

11  Plaintiff's symptom testimony.  Tr. 20.  An ALJ may not discredit a claimant's

12  symptom testimony and deny benefits solely because the degree of the symptoms

13  alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857;

14  *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.

15  However, the medical evidence is a relevant factor in determining the severity of a

16  claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §

17  404.1529(c)(2).  Minimal objective evidence is a factor which may be relied upon

18

19

20

ORDER - 18

in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

As discussed *supra*, the ALJ's other reasons for discrediting Plaintiff's symptom testimony are legally insufficient.  Because, the ALJ's rejection of Plaintiff's symptom claims may not solely be based on the lack of supporting objective medical evidence, the ALJ is instructed to reevaluate Plaintiff's symptom testimony on remand.  *See Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47; *Fair*, 885 F.2d at 601.

**B.    Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Donald. Orminski, PDM.  ECF No. 14 at 18-21; ECF No. 16 at 8-9.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to

ORDER - 19

1  the opinions of specialists concerning matters relating to their specialty over that of

2  nonspecialists." *Id.* (citations omitted).

3      If a treating or examining physician's opinion is uncontradicted, the ALJ

4  may reject it only by offering "clear and convincing reasons that are supported by

5  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

6  "However, the ALJ need not accept the opinion of any physician, including a

7  treating physician, if that opinion is brief, conclusory, and inadequately supported

8  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

9  (9th Cir. 2011) (internal quotation marks and brackets omitted).  "If a treating or

10 examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

11 may only reject it by providing specific and legitimate reasons that are supported

12 by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–

13 31).  The opinion of a nonexamining physician may serve as substantial evidence if

14 it is supported by other independent evidence in the record.  *Andrews v. Shalala*,

15 53 F.3d 1035, 1041 (9th Cir. 1995).

16     Dr. Orminski was Plaintiff's treating podiatrist throughout the adjudicatory

17 period and submitted two medical reports relating to Plaintiff's functioning in

18 2016, *see* Tr. 256-58, 287-89, as well as an opinion within a treatment record in

19 2017.  *See* Tr. 335.  Because Dr. Orminski's 2016 opinions are contradicted by

20 those of the state agency consultants, who opined Plaintiff could perform full time

ORDER - 20

1  sedentary or light work, the ALJ was required to provide specific and legitimate

2  reasons to reject or discount those opinions. *Bayliss*, 427 F.3d at 1216 (citing

3  *Lester*, 81 F.3d 821 at 830-31).[3]

4      *1. September 2016 Opinion*

5      On September 9, 2016, Dr. Orminski completed a medical report wherein he

6  diagnosed Plaintiff with IPK and described her symptoms as "painful lesions [on]

7  both feet limiting walking and standing," which worsen with weight bearing. Tr.

8  256-57. He opined that Plaintiff's condition would continue to deteriorate under

9  the demands of regular work, and that she would likely miss four or more days of

10  work per month due to her impairment. Tr. 257. He concluded that she was

11  severely limited, unable to perform sedentary work, and that such limitations had

12  existed since at least December 14, 2014. Tr. 257-58.

13      The ALJ gave little weight to this opinion. Tr. 20. Specifically, she found

14  that Dr. Orminski's assessments that Plaintiff was and had been incapable of

15  performing full-time sedentary work since December 2014, Tr. 257-58, and that

16  Plaintiff would miss four days of work per week, Tr. 257, were inconsistent with

17  the record as a whole. Tr. 20. An ALJ may reject limitations "unsupported by the

18  _____

19  [3] Dr. Orminski's third opinion, issued within a treatment note on September 21,

20  2017, was not contradicted by any other medical source. *See* Tr. 335.

ORDER - 21

1  record as a whole." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th

2  Cir. 2003).  The specific and legitimate reason standard can be met by "setting out

3  a detailed and thorough summary of the facts and conflicting clinical evidence, [the

4  ALJ] stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at

5  725; *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reasons

6  do not "achieve the level of specificity" required to justify an ALJ's rejection of an

7  opinion).

8       In support of her finding, the ALJ first noted that Plaintiff "continued to

9  work and engage in substantial gainful activity until June 2016, so the claimant

10  already exceeded the limitations [Dr. Orminski] opined until that time."  Tr. 20.

11  "The ALJ may reject a medical opinion that is inconsistent with the claimant's

12  work activity."  *Schultz v. Berryhill*, No. 3:16-cv-00757-JR, 2017 WL 2312951, at

13  *4 (D. Or. Apr. 21, 2017) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d

14  685, 692-93 (9th Cir. 2009)).  Here, Plaintiff continued to work a full-time light

15  duty job until June 2016, the alleged onset date.  Tr. 154.  The ALJ reasonably

16  concluded that Plaintiff's employment up to June 2016 was inconsistent with Dr.

17  Orminski's assessment that she was and had been severely limited (i.e., unable to

18  meet the demands of full time sedentary work) since at least December 2014, as

19  well as his assessment that her impairment caused her to miss four days of work

20  per month.  Tr. 20; *see also* Tr. 257-58.  Plaintiff contends that, even if Dr.

ORDER - 22

Orminski's opinion that she had disabling limitations prior to the date she stopped working were not owed weight for the period prior to onset, it does not follow that the entire opinion can be dismissed.  ECF No. 14 at 21.  However, it is well established that an ALJ may properly reject or give less weight to a medical opinion that is inconsistent with the claimant's work activity.  *See Schultz*, No. 3:16-CV-00757-JR, 2017 WL 2319251, at *4; *Valentine*, 574 F.3d at 692-93; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).  Thus, this was a specific and legitimate reason to discount the opinion.

Second, the ALJ found Plaintiff's treatment history, prescriptions for comfortable shoes with inserts and monthly callus debridement, was inconsistent with the severity of the limitations opined by Dr. Orminski.  Tr. 20.  "[A]n ALJ may discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment."  *Rollins*, 261 F.3d at 856.  However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated."  *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).  Here, throughout his treatment notes and opinions, Dr. Orminski acknowledged that there is no surgical solution for Plaintiff's impairment and that the optimum treatment, in addition to consistent debridement, is minimum ambulation and weightbearing.  *See* Tr. 337 ("These are rapidly forming lesions that do not have alternative treatments other than debridement. There is not a surgical solution");

ORDER - 23

1    Tr. 273 ("There are no reasonable surgical solutions for the patient. The optimum

2    treatment is minimum ambulation and weightbearing."); Tr. 287 (noting "palliative

3    care" as treatment for Plaintiff). Moreover, even with frequent debridement (and

4    after several foot surgeries, *see* Tr. 38), Dr. Orminski noted that any pain relief was

5    temporary. *See* Tr. 337 (noting debridement gives patient "temporary relief" and

6    that "80% of her lifestyle is limited"); Tr. 272 ("All lesions debrided today

7    allowing the patient to ambulate somewhat improvement. She is severely limited

8    on timeframe that she can spend on her feet."); *see also Pedersen v. Astrue*, No.

9    C09-1193-JLR-JPD, 2010 WL 2217869, at *6 (W.D. Wash. May 12, 2010), *report*

10    *and recommendation adopted*, No. C09-1193-JLR, 2010 WL 2219094 (W.D.

11    Wash. June 1, 2010) (noting that, while plaintiff's pain improved immediately

12    following debridement, "the inference that these procedures resolved the pain

13    problem is belied by the substantial number of surgeries, debridement procedures,

14    and Dr. Cutler's comment that the problems were recurrent and chronic"). Thus,

15    based on the nature of Plaintiff's IPK, which was deemed to have no surgical

16    options or alternative treatments, the fact that Plaintiff was treated with routine

17    debridement and prescribed footwear was not a specific and legitimate reason to

18    reject Dr. Orminski's opinion. Nevertheless, this error is harmless because the

19    ALJ identified another independent legally sufficient reason to discredit the

20

ORDER - 24

1   opinion.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63

2   (9th Cir. 2008); *Molina*, 674 F.3d at 1115.

3          Third, the ALJ found that "there is no indication in the medical record that

4   the claimant would miss four days of work per month due to her impairments."  Tr.

5   20.  A medical opinion may be rejected by the ALJ if it is conclusory or

6   inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  Here,

7   the ALJ appears to reject Dr. Orminski's absenteeism assessment based, in part, on

8   treatment records indicating that Plaintiff had "painful lesions/calluses on the

9   bilateral feet," but also had "full motor strength in all planes of the feet including

10  dorsiflexion, plantarflexion, inversion, and eversion, intact sensation, no edema or

11  erythema, normal pulses, normal blood flow, and a normal gait."  Tr. 20 (citing Tr.

12  236, 238 (indicating normal ambulation); Tr. 260, 262, 265-66, 317-42 (podiatry

13  records indicating full motor strength, flexion, sensation, etc.); Tr. 295 (indicating

14  normal gait)).  Plaintiff challenges the ALJ's reliance on the cited evidence,

15  arguing specifically that motor strength, sensation, blood flow, and edema "ha[ve]

16  virtually nothing to do with the lesions on her feet."  ECF No. 14 at 16-17

17  (discussing ALJ's assessment of the objective medical evidence in relation to

18  Plaintiff's symptom testimony); ECF No. 16 at 7.  Defendant asserts these "normal

19  objective findings" substantially support the ALJ's conclusion.  ECF No. 15 at 15.

20  Plaintiff also argues that the ALJ failed to consider that Dr. Orminski instructed

ORDER - 25

her to avoid weightbearing because her lesions worsened with weightbearing and contends that this evidence supports Dr. Orminski's absenteeism finding.  ECF No. 14 at 20-21 (citing Tr. 257, 273); ECF No. 16 at 8.

The ALJ does not explain how some of the cited findings, which are seemingly not associated with Plaintiff's IPK, (i.e., "full motor strength in all planes of the feet including dorsiflexion, plantarflexion, inversion, and eversion, intact sensation, no edema or erythema, normal pulses, normal blood flow"),[4] are inconsistent with, or otherwise bear on Dr. Orminski's assessment.  However, the

_____

[4] The Court notes that the same normal findings are repeated throughout Dr. Orminski's treatment records, which simultaneously report objective findings directly related to the lesions caused by Plaintiff's diagnosed IPK, suggesting they are not associated with her condition.  *See e.g.*, Tr. 260 (reporting under heading "DERM" "intractable plantar keratoses submetatarsal 1 and 4 left foot submetatarsal 3 right foot. Distillates the right third toe;" under "COMMENT" "painful keratoses bilaterally;" and under "Plan Comments" "multiple lesions debrided today with #10 blade," while also noting strength in all planes under "MUSCULOSKELETAL;" lack of edema or erythema under "VASCULAR;" and normal sensation under "NEUROSENSORY"); Tr. 262 (similar); Tr. 265-66 (similar).

ORDER - 26

1  medical records relating to normal ambulation/gait are clearly relevant to

2  Plaintiff's impairment, and, along with her work history, were reasonably

3  interpreted by the ALJ to be inconsistent with Dr. Orminski's assessment of her

4  limitations.  Accordingly, this was a specific and legitimate reason to discount the

5  assessment.  Moreover, even if the ALJ erred, any such error would be harmless

6  because the ALJ provided an independent specific and legitimate reason, i.e.,

7  Plaintiff's ability to work with the impairments during the period of the opined

8  limitations, to discount the opinion.  *See Carmickle*, 533 F.3d at 1162-63; *Molina*,

9  674 F.3d at 1115.

10      *2.  December 2016 Opinion*

11      On December 28, 2016, Dr. Orminski submitted a second medical report

12  wherein he diagnosed Plaintiff with chronic IPK, noted she was unable to walk for

13  more than two hours and that walking increases her foot pain, and concluded she

14  was limited to sedentary work.  Tr. 287-88.  Dr. Orminski noted that Plaintiff

15  would miss zero days of work per month because she was retired and noted that the

16  assessed limitations had existed for 45 years.  Tr. 288-89.

17      The ALJ gave little weight to this opinion.  Tr. 20.  Plaintiff does not

18  challenge the ALJ's evaluation of the opinion and appears to concede that it "does

19  not answer as to her current functional limitations."  *See* ECF No. 14 at 21, n.1.

20  Instead, Plaintiff argues that discounting the December 2016 opinion "would still

be consistent with giving the September 2016 opinion controlling weight, as it was owed." *Id*. Because Plaintiff does not challenge the ALJ's treatment of Dr. Orminski's December 2016 opinion, the Court does not address it.

### 3. September 2017 Opinion

On September 21, 2017, Dr. Orminski saw Plaintiff for a follow-up appointment. Tr. 335. In the resulting treatment note, he opined, "Patient has [a] limited ability to walk beyond 4 hours daily. This usually is [a] limiting factor beginning for ambulation [in the] early afternoon." Tr. 335. The ALJ gave great weight to Dr. Orminski's opinion that Plaintiff was limited to four hours of walking daily, finding it was consistent with the record as a whole. Tr. 20.

Plaintiff challenges the weight given to the opinion and contends the opinion was improperly taken out of context. ECF No. 14 at 19. Plaintiff presents statements from prior treatment records wherein Dr. Orminski remarked it was "understandable" that Plaintiff was applying for disability considering her "inability to walk for any extended distance," *id*. (citing Tr. 277 (Dec. 2015)), and noted, "80% of her lifestyle at home was still limited." *Id*. at 19-20 (citing Tr. 337 (Aug. 2017)). However, the cited comments from prior treatment records do not offer specific functional limitations and do not contradict Dr. Orminski's finding in September 2017. While an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply

ORDER - 28

1  when the ALJ credits uncontradicted opinion evidence. *Orteza v. Shalala*, 50 F.3d

2  748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216.  Here, the ALJ's evaluation of

3  the opinion's consistency with the record is supported by substantial evidence, to

4  include Plaintiff's work history, medical records indicating normal ambulation and

5  gait, and the unchallenged opinions of the state agency consultants, who both

6  assessed Plaintiff could walk/stand for four hours out of a workday. *See* Tr. 64, 75.

7  Thus, Plaintiff has failed to establish error on this ground.

8  **C.    Other Challenges**

9          Plaintiff raises additional challenges to the ALJ's analyses at steps three and

10  five. ECF No. 14 at 4-13; ECF No. 16 at 2-6.  The Court declines to address these

11  challenges in full here.  However, the Court briefly addresses the following.  First,

12  Plaintiff contends the ALJ erred by failing to consider whether her IPK met or

13  equaled Listing 8.05, which she asserts is the listing "most similar" to her

14  impairment and which she posits she meets or equals.  ECF No. 14 at 4-8; ECF No.

15  15 at 2-3.  Plaintiff presents evidence in the form of subjective symptom testimony,

16  treatment records, and medical opinions to support her argument.  ECF No. 14 at

17  4-8; ECF No. 15 at 2-3.  Because the ALJ did not consider Listing 8.05 initially

18  and because the ALJ's assessment of the evidence may be impacted on remand, the

19  ALJ is instructed to evaluate Plaintiff's IPK under Listing 8.05 and make a new

20  determination at step three.  If necessary, the ALJ shall obtain additional medical

1  evidence related to Plaintiff's IPK or call a medical expert to testify as to

2  Plaintiff's ability to ambulate as it pertains to the requirements of Listing 8.05.

3      Second, Plaintiff challenges the ALJ's finding at step five regarding work in

4  the national economy based on her previously acquired transferable skills.  ECF

5  No. 14 at 8-13; ECF No. 16.  In light of the Court's findings and instruction to

6  conduct a new sequential analysis on remand, the Court declines to address

7  Plaintiff's step five arguments at this point.

8  **D.    Remedy**

9      Plaintiff urges this Court to remand for an immediate award of benefits.

10 ECF No. 14 at 2, 8, 18, 21; ECF No. 16 at 9-11.  "The decision whether to remand

11 a case for additional evidence, or simply to award benefits is within the discretion

12 of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone*

13 *v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's

14 decision for error, the Court "ordinarily must remand to the agency for further

15 proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v.*

16 *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare

17 circumstances, is to remand to the agency for additional investigation or

18 explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th

19 Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has

20 "stated or implied that it would be an abuse of discretion for a district court not to

ORDER - 30

1   remand for an award of benefits" when three conditions are met. *Garrison*, 759

2   F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record

3   has been fully developed and further administrative proceedings would serve no

4   useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

5   rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

6   improperly discredited evidence were credited as true, the ALJ would be required

7   to find the claimant disabled on remand, the Court will remand for an award of

8   benefits. *Revels*, 874 F.3d at 668.  Even where the three prongs have been

9   satisfied, the Court will not remand for immediate payment of benefits if "the

10  record as a whole creates serious doubt that a claimant is, in fact, disabled."

11  *Garrison*, 759 F.3d at 1021.

12         Here, further proceedings are necessary to properly weigh Plaintiff's

13  symptom claims and evaluate their impact on the ALJ's sequential analysis.  It is

14  not clear from the record that the ALJ would be required to find Plaintiff disabled

15  if all the evidence were properly evaluated.  Therefore, this case is remanded for

16  further proceedings.  The ALJ is instructed to conduct a new sequential analysis,

17  and specifically is instructed to assess Plaintiff's impairment under Listing 8.05

18  and call an impartial medical expert if necessary and to reweigh Plaintiff's

19  symptom claims.

20

ORDER - 31

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 7, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 32